[Civil No. 1225. Filed May 14, 1912.]

[123 Pac. 619.]

## JOSEPH H. BOYD, Appellant, v. THE SECOND-HAND SUPPLY COMPANY, Appellee.

1. SALES—CONTRACTS—INDIVISIBLE CONTRACTS—RIGHTS OF BUYER.—
Under Laws of 1907, chapter 99, section 44, providing that, where a seller delivers a quantity of goods, less than he contracted to sell, the buyer may reject them, a buyer may reject a part of the goods tendered by the seller, where he fails to tender all the goods, and thereby avoid liability for the contract price, where the contract is indivisible.

2. SALES—CONTRACTS—"INDIVISIBLE CONTRACT"—"DIVISIBLE CONTRACT."
An "indivisible contract" of sale is one in which, by its terms, the price for a portion of the goods is not fixed or cannot be ascertained, and is the opposite of a "divisible contract" of sale, defined in Laws of 1907, chapter 99, section 76, as a contract of sale in which, by its terms, the price for portions of the goods is fixed or ascertainable by computation, though, as provided by section 9, the contract price may be fixed by the course of dealing between the parties.

3. SALES—BREACH OF CONTRACT BY BUYER—REMEDY OF SELLER.—
Where a buyer repudiates the contract of sale and refuses to accept the goods, and gives notice to the seller thereof, the seller may either treat the contract as broken and recover damages for its breach, or treat the contract as existing and recover the contract price, or treat the contract as rescinded, acquiesce in the repudiation by the buyer, and receive a return of the goods and take possession thereof as offered.

4. SALES—BREACH OF CONTRACT BY BUYER—REMEDY OF SELLER.—
Where a seller of an engine and pump, on the buyer's repudiation of the contract, stopped the transportation of the pump, he acquiesced in the buyer's repudiation of the contract and rescinded it, so far as the pump entering into the contract was concerned; and he could not recover the price for the pump.

5. SALES—CONTRACTS—ACQUIESCENCE BY SELLER IN REPUDIATION BY BUYER—EFFECT.—Where a seller, in an entire contract of sale of an engine and pump, acquiesced in the repudiation by the buyer by refusing to accept the pump, and treated the contract as rescinded to that extent, he must treat the contract rescinded as a whole; and he must accept a return of the engine, when tendered by the buyer.

APPEAL from a judgment of the District Court of the Fourth Judicial District, in and for the County of Yavapai, Elwood M. Doe, Judge. Modified and affirmed.

### STATEMENT OF FACTS BY THE COURT.

This action is to recover the price of goods, wares and mining machinery, alleged to have been sold and delivered by the plaintiff to the defendant. The amended complaint sets up two separate causes of action, one of which is founded on a formal written contract covering a large list of articles sold for a gross price of $5,051, containing the conditions of payment and a warranty that the articles shall give the same efficiency as if new, and admitting that of the purchase price $3,000 has been paid in accordance with the agreement, claiming a balance due in the sum of $2,051, and alleging full performance on the part of the plaintiff. The second cause of action is founded on an account alleged to cover, among a large number of articles, a gasoline engine and a pump, all of the aggregate agreed price of $2,367, and alleges that the defendant promised to pay the same. As a credit to defendant, it is alleged that, since filing the original complaint, the plaintiff has stopped the pump *in transitu,* and that the pump was so stopped for the reason that the defendant had notified plaintiff he would not accept the engine then at Hillside, Arizona, and that he would not accept the pump. It is alleged that the agreed value of the pump is $1,074, thus leaving a balance due thereon of the sum of $1,293.

The defendant confesses the written contract, and seeks to avoid it by setting up a counterclaim, consisting of a claim for a breach of the warranty by reason of a number of articles received failing to meet the standard of efficiency agreed upon, and his damages in the amount required to repair or complete them, and also a failure to deliver a number of the articles covered by the contract, and other items of damage. As to the second cause of action, defendant, by a cross-complaint and as a counterclaim, admits the purchase of the articles, and alleges that the pump and engine mentioned in the second cause of action, together with the pipe for a pipe-line and a boiler, were purchased as a whole, and were intended and understood to compose a complete pump-

ing plant, for an aggregate price and for the specific purpose. Defendant alleges that the boiler and engine were shipped at one time, and the pump was shipped at another date, and that plaintiff refused to ship the pipe at any time; that the refusal to ship the pipe rendered the engine and pump useless to the defendant, and for that reason he refused to accept the engine and pump, and so notified the plaintiff. He alleges other items of damage to him, all of which are set forth in separate paragraphs.

The plaintiff replies to or answers the new matter contained in the cross-complaint, denying some matters and gives its understanding of the contract of purchase and sale of the pumping plant in these words: "Admits that plaintiff contracted to deliver to defendant f. o. b. cars at Seneca Falls, New York, one pump, and alleges that plaintiff also agreed to deliver to defendant f. o. b. cars at Denver, Colorado, one gasoline engine, to be used as a part of said pumping plant and pipe-line. Alleges that said engine, which was of the agreed value of $826, was shipped by railroad freight to Hillside, Yavapai county, Arizona, and tendered to defendant, but that he refused to accept the same. . . . Alleges that defendant has not paid plaintiff said sum of $826; that the contract price of said engine and pump was $1,900, $950 whereof was agreed to be paid by the defendant with the order of said goods; that the defendant refused to pay said $950, or any part thereof, with the order for said goods, whereupon said pump, which was of the agreed value of $1,074, was stopped *in transitu,* as set forth in the amended complaint." And alleges that the pipe was not shipped, for the reason the defendant refused to pay the price charged before the pipe would be shipped, as demanded by the plaintiff, and no charge is made therefor. These are the pleadings upon which the cause was tried.

The record does not contain either the written contract upon which the first cause of action is founded, or the letters, telegrams, and orders containing the terms and conditions upon which the account composing the second cause of action, including the purchase of the pumping plant, is founded. The plaintiff had judgment on both causes of action for $2,867.65, a credit of $477.15 having been allowed defendant, and he appeals.

Mr. H. H. Linney, for Appellant.

Mr. Jno. J. Hawkins, Mr. E. J. Mitchell, and Mr. Willis V. Eliott, for Appellee.

CUNNINGHAM, J.—The appellant claims the judgment is excessive, and particularly specifies that the value of an engine, viz., $826, should be deducted therefrom. The contract of purchase of the pumping plant, which included the engine, is difficult to arrive at with any satisfactory degree of certainty, as we have but little evidence of this contract outside of the pleadings of both parties.

The appellant sets up the elements of such contract covering pipe for a pipe-line, a pump, and an engine, and alleges that said articles were sold and purchased as a whole for a specific purpose, to wit, a pumping plant, and alleges that the plaintiff had full knowledge of the said purpose for which the plant was to be used. He then alleges that plaintiff refused to deliver a material part of the articles composing the entire plant; whereupon, and on account of the said refusal and breach, the defendant rescinded the contract of purchase and rejected the articles offered. This he could do, if the contract was indivisible, and avoid the liability for the price contracted to be paid. Sess. Laws Ariz. 1907, sec. 44, c. 99; *Wooten* v. *Walters*, 110 N. C. 256, 14 S. E. 734, 736.

The testimony of Boyd offered in the deposition, reasonably tended to establish the entire or indivisible contract, and the record is without conflict in this respect. An indivisible contract to sell or sale means a contract to sell or a sale in which, by its terms, the price for a portion or portions of the goods, less than a whole, is not fixed or cannot be ascertained by computation, as the opposite of a ''divisible contract to sell or sale,'' defined in section 76, page 259, chapter 99, Session Laws of Arizona of 1907.

In order to make such a binding contract, the gross price, or any price, need not be stated in the contract; but the contract price may be fixed and determined by the course of dealing between the parties. Sec. 9, c. 99, *supra.*

The buyer was entitled to rescind such a contract as he has set forth when only a part of the articles covered thereby were delivered to him; and when he elects to do so, which

he has done in this case, he ceases to be liable for the price upon refusing to accept the goods, or, when they have been delivered to him, by returning or offering to return the goods. Sec. 44, c. 99, *supra.*

From the defendant's standpoint, in refusing to accept the engine at Hillside, and notifying the plaintiff of such refusal and of his refusal to accept the pump, he was justified and acting wholly within his rights; and the testimony offered in the deposition of Boyd fairly tends to support this view of the transaction. The record discloses no material conflict of evidence on this view of the transaction. The defendant was therefore entitled to a credit on the claim of plaintiff of $826, the alleged value of the engine, as he was not liable for the purchase price, unless we take the appellee's view of the transaction.

The appellee, in its reply or answer to the defendant's cross-complaint or counterclaim, setting up the pumping plant transaction, clearly pleads an entire contract of sale of the pump and engine, setting forth the gross, aggregate agreed price and the condition and time of the first payment thereon. It alleges the agreed places of delivery to the carrier and the point of destination where the articles were agreed to be shipped to be placed in the actual possession of the defendant. It then alleges performance of its part of the contract in full, and alleges a breach of the contract on the part of the defendant, defendant's failure and refusal to pay as agreed, and defendant's absolute repudiation of the contract, his refusal to accept the property, and his notice to plaintiff of such refusal.

Plaintiff cannot pursue two inconsistent remedies in such case. It must either treat the contract as broken and recover damages for its breach, or treat the contract as existing and recover the full contract price, or treat the contract as rescinded, acquiescence in the repudiation of the contract by the defendant, and receive a return of the property in the goods and take the possession of the goods as offered.

Plaintiff alleges that it stopped the pump *"in transitu,"* for the reason the defendant refused and neglected to pay for the same, to wit, $1,074, and because defendant notified plaintiff he would not accept the pump, as alleged in the amended complaint, and because the defendant refused to

pay $950 on the purchase price, to wit, $1,900, with his order for the pump and engine, as alleged in its answer to the cross-complaint. The expression *"in transitu"* is used in the pleadings of the plaintiff in an entirely different sense to the meaning given the phrase in the law books, including the Uniform Sales Law, as enacted in chapter 99 of the Session Laws of Arizona 1907, section 57. The reasons given by the plaintiff for stopping the pump clearly indicates it did not stop the pump *"in transitu,"* as that term is used in the sales act and the law books, but that it stopped the pump, because it did not care to take the risk of collecting its value from the defendant under the circumstances then existing; and it preferred to recover the possession of the pump, and, so far as the pump and its value is concerned, to acquiesce in the course taken by the defendant. Clearly the effect of such action was that plaintiff acquiesced in the defendant's repudiation of the contract of sale, and rescinded the contract, so far as the pump entered into the contract. This is further demonstrated by the fact that plaintiff makes no claim for remuneration for freight charges or otherwise on the pump; yet it alleges that the pump was delivered and shipped and thereafter stopped.

Although plaintiff admits an entire contract of sale of the engine and pump, and, as we have seen, has acquiesced in the repudiation by the defendant of that contract, yet, in the same connection, it seeks to treat that rescinded contract in force as applied to the engine. A contract cannot be in force, broken, and rescinded all at one and the same time. A party to a contract cannot acquiesce in the rescinding of a contract, in so far as it is benefited thereby, and insist on its remedies for a breach, or for enforcement for a part of the consideration of the same contract. It was the duty of the plaintiff to accept the return of the engine.

The plaintiff, in no view of the case, is entitled to recover for the engine; the engine is the property of the plaintiff, and the judgment appealed from included the alleged value of the engine, and is excessive to that amount.

The appellant complains of other items of credit, and the record discloses a number of small items of credit that would seem to be allowable, as they come squarely in the same class of credits, viz., necessary expense incurred by the appellant

in altering or repairing the articles received so they could be used for the purpose intended, and as warranted by the appellee in the written contract. The trial court allowed the appellant credits for such expense incurred by him on a number of such articles, which was right.. The record discloses, in addition to the sum allowed, the appellant incurred an expense of $15 in the repairs on the wooden guides; also $13 in the alteration or repair on the pipe-cutter wheels. A worthless Funk & Co. burner was delivered, which, as delivered, was of a value of $3 less than was the value of the burner ordered and charged for. These items seem to be proper credits. The plaintiff offered no testimony contradicting the evidence produced by the appellant, made no claim that the expense incurred was not necessary, or the value was not more or other than claimed by appellant. The judgment was excessive in the sum of $857.

No other error appears in the record, and a new trial would seem to serve no useful purpose.

The judgment of the lower court is modified and reduced in said sum, and, as modified, said judgment is affirmed in the sum of $2,010.67, and the case is remanded to the superior court of Yavapai county, with instructions to enter judgment for that amount, and that appellant recover his costs of this appeal.

FRANKLIN, C. J., and ROSS, J., concur.

NOTE.—As to rights and remedies of seller on breach of contract of sale, see note in 133 Am. St. Rep. 563.