[No. 1965]

## J. R. ELGAN, RESPONDENT, *v.* FRANCES-MOHAWK MINING AND LEASING COMPANY (A CORPORATION), RESPONDENT, AND KEANE WONDER MINING COMPANY (A CORPORATION), APPELLANT.

1. PLEADING—AMENDMENT—CONFORMITY TO PROOF.

Plaintiff, in an action to compel the surrender of shares of stock, was properly permitted, after decision, but before judgment, to amend and supplement his complaint by setting forth undisputed facts shown on the trial to have existed at the time thereof.

2. PLEADING—AMENDMENT—ESTOPPEL TO OBJECT.

Where, in an action to compel the surrender of shares of stock, a motion of the defendant for a nonsuit and consent thereto by the plaintiff were withdrawn by stipulation, and defendant given leave to amend its answer to show facts in evidence occurring subsequent to the institution of the suit, defendant could not object to the amendment of the plaintiff's complaint, after decision and before judgment, to conform to such facts.

3. MARSHALING ASSETS AND SECURITIES—SUBSTITUTION OF LIEN—RIGHTS AGAINST PRINCIPAL DEBTOR.

A bank, which held shares of stock in a mining company belonging to its president as collateral security for loans and advances to the company and such president, assigned the notes and indebtedness to another company and transferred the collateral. Upon the issuance of new notes, secured by the deed of trust of the mining company, the transferee delivered the stock held as collateral to the company, having previously refused to honor an assignment of a portion of the shares and an order for their delivery, executed by the owner of the shares. The mining company held the number of shares claimed by such assignee as security for the debt of its president, and released the remainder, which was about five times that of the number held, to such president. *Held,* that, as assignee of the former creditors, the company had the right to hold the collateral transferred to it for the payment of the notes; but, as it was bound to first exhaust the security belonging to the principal debtor, which, being greater than that retained, must be considered to have been sufficient, the retention of the stock belonging to the person to whom it had been transferred was improper.

APPEAL from the District Court of the Seventh Judicial District of the State of Nevada, Esmeralda County; *Theron Stevens,* Judge.

Action by J. R. Elgan against the Frances-Mohawk

Mining and Leasing Company and Keane Wonder Mining Company.    From a judgment for plaintiff, the Keane Wonder Mining Company appeals.    **Affirmed.**

## STATEMENT OF FACTS

On or about the month of July, 1906, one Homer Wilson, by purchase from one John Keane and another, became the owner of something like 1,100,000 shares of the capital stock of the Keane Wonder Mining Company, and succeeded to the presidency of the corporation.    The said Homer Wilson at that time made arrangements with the State Bank and Trust Company at Goldfield, whereby the mining company and himself were to have, and did have, loans and advances from time to time, and all of said stock was by him then pledged to said bank as security for such loans and advances.

About the latter part of September, 1906, the said Homer Wilson entered into an arrangement with the said J. R. Elgan, respondent herein, whereby the latter was to assist in the sale of certain treasury stock of the company, and for his services was to receive a certain portion of the stock of the company then owned by the said Wilson and pledged as security, as aforesaid.    On or prior to December 23, 1907, the said Homer Wilson was indebted to the said State Bank and Trust Company in the sum of about $104,000; and the said Keane Wonder Mining Company was, at the said time, also indebted to the said bank in the sum of $94,979.    As security for the payment of the indebtedness of the said Wilson and the said Keane Wonder Mining Company, the said bank was then holding 975,000 shares of the said stock of the said Wilson. Between the 21st and the 23d days of December, 1907, the said Keane Wonder Mining Company purchased certain property from the said Wilson for $45,298.94, and by arrangement between them, and with the consent of said bank, said amount was credited by said bank to Wilson and charged to the Keane Wonder Mining Company.    On said date, December 23, 1907, the Keane Wonder Mining Company gave to the said bank its four promissory notes,

aggregating $140,278.92, and the said Wilson executed two notes, covering the remaining portions of his indebtedness to the bank under the aforesaid arrangement, aggregating about $59,000.   The said 975,000 shares of stock remained with the said bank as collateral.   On the same day, December 23, 1907, the respondent, J. R. Elgan, and the said Homer Wilson entered into a written agreement in settlement of their personal affairs, the material portion of which reads: "That the party of the first part hereby agrees to transfer to the party of the second part, or his assigns, one hundred and sixty thousand (160,000) shares of the capital stock of the Keane Wonder Mining Company, now held by the State Bank and Trust Company, as collateral security for the indebtedness of the Keane Wonder Mining Company, and the indebtedness of Homer Wilson, said stock to be delivered to said second party or his assigns at the time of its surrender and release by the State Bank and Trust Company to Homer Wilson." (Plaintiff's Exhibit 1.)

On or about February 12, 1908, said State Bank and Trust Company transferred and assigned the said notes and indebtedness of said Keane Wonder Mining Company and the said Wilson, together with all of said stock held as collateral security for the same, to the defendant Frances-Mohawk Mining and Leasing Company, which latter company thereafter continued to be, and at the time of the commencement of this action was, the holder of all of said notes and indebtedness, together with all of said collateral.   On May 22, 1908, the respondent, J. R. Elgan, obtained from the said Homer Wilson a written letter or order reading as follows: "Frances-Mohawk Mining and Leasing Co., Goldfield, Nevada.   Gentlemen: You are hereby authorized to deliver to J. R. Elgan one hundred and sixty thousand (160,000) shares of the capital stock of the Keane Wonder Mining Company referred to in the assignment to J. R. Elgan by me dated December 23, 1907, being a part of the nine hundred and seventy-five thousand (975,000) shares now held by you as collateral security for moneys advanced by you to the Keane Wonder

Mining Company. Yours very truly, [Signed] Homer Wilson. Dated: Keane Wonder Mine, May 22, 1908." This letter or order was by the said respondent immediately thereafter presented to the said Frances-Mohawk Mining and Leasing Company; but the said company refused to deliver any of said stock in pursuance of said letter or order.

On June 23, 1908, the said J. R. Elgan brought this action to recover possession of the said 160,000 shares of stock. Upon the trial evidence was also admitted of the the following facts as occurring subsequent to the institution of the action: On November 23, 1908, the Keane Wonder Mining Company executed new notes to the Frances-Mohawk Mining and Leasing Company, covering the amount then remaining unpaid on its said old notes and indebtedness, and including, also, the amount then remaining unpaid on said notes and indebtedness of Homer Wilson. To secure these new notes, the Keane Wonder Mining Company executed a deed of trust on its mining property and mill to one Wellington Gregg, Jr. Said Wilson at the same time paid the sum of $17,400 on account of his said notes, leaving owing thereon a balance of about $42,000. The Wilson notes and indebtedness were then transferred and assigned by the Frances-Mohawk Mining and Leasing Company to the Keane Wonder Mining Company, and taken over with said stock and held as collateral security therefor. By reason of the pendency of this action at that time, 160,000 shares of said stock were placed in escrow with said Gregg, with instructions to deliver the same to the Frances-Mohawk Mining and Leasing Company, if it be finally adjudged in said suit that said Elgan is entitled to recover said 160,000 shares of stock from the Frances-Mohawk Mining and Leasing Company, but in all other events to deliver said stock to the Keane Wonder Mining Company. Said stock placed in escrow was then, and ever since, and is now, claimed by the Keane Wonder Mining Company as collateral security for the unpaid balance of said Wilson notes and indebtedness, amounting to about $42,000

and interest, and which has never been paid.   Both of said companies and said Wilson signed said escrow instructions.   At the same time the Keane Wonder Mining Company surrendered to the order of said Homer Wilson the remaining 815,000 shares.

The complaint alleged that on December 23, 1907, the Keane Wonder Mining Company owed the State Bank and Trust Company $94,979, and that one Homer Wilson owed said bank on said day $45,298.94, payment of which was then assumed by said Keane Wonder Mining Company; and that said last-mentioned company gave its several promissory notes to said bank on said December 23, 1907, to cover its own and said Wilson's indebtedness, aggregating the sum of $140,278.92.   Said complaint also alleged that the "plaintiff is, and at all times was, the owner of 160,000 shares of said stock," being part of a certain 975,000 shares "now, and at all of said times, standing in the name and owned (subject to plaintiff's ownership) by Homer Wilson."   It is also alleged that prior to May 22, 1908, the defendant Frances-Mohawk Mining and Leasing Company had come into possession of said 975,000 shares of stock, and that on the last-mentioned day said Wilson gave to the plaintiff a written order on said Frances-Mohawk Mining and Leasing Company for the delivery of 160,000 out of said 975,000 shares of said stock.   Said complaint then alleges and proceeds upon the theory that on December 23, 1907, while plaintiff was the owner of said 160,000 shares of stock, he and said Homer Wilson pledged said 975,000 shares to said bank as an accommodation to the Keane Wonder Mining Company, as security for the payment of its said notes and indebtedness, amounting to $140,278.92, as aforesaid; that all of said notes and indebtedness had been paid prior to said May 22, 1908; and that plaintiff was entitled to the possession of said stock.

The defendant Keane Wonder Mining Company answered, denying the general facts showing plaintiff's alleged right to the possession of said stock, and denying that he ever was or is the owner of said stock, or that he

pledged it for said debt, or at all, or that he pledged it as an accommodation to said company, or that plaintiff is entitled to the possession of said stock.

The defendant Frances-Mohawk Mining and Leasing Company filed a demurrer, but later on withdrew its demurrer, and by stipulation in writing filed in the case waived time to answer, and consented that its default be taken and entered.

The plaintiff, J. R. Elgan, and the said Homer Wilson were the only witnesses for the plaintiff at the trial, and there is no substantial conflict in their testimony as to material facts.

Upon the conclusion of plaintiff's evidence, the defendant Keane Wonder Mining Company moved for a nonsuit and for judgment in its favor. Thereupon plaintiff consented to the granting of the motion for a nonsuit; whereupon the defendant Keane Wonder Mining Company applied to the court for leave to withdraw its motion for a nonsuit, and to file amendments to its answer to conform to the proofs. It was thereupon stipulated by the plaintiff and the defendant Keane Wonder Mining Company that plaintiff should withdraw its consent to the granting of motion for nonsuit, and that defendant Keane Wonder Mining Company should be allowed to withdraw said motion for a nonsuit, and that said defendant should file said amendments to its answer, all of which was accordingly done.

Thereafter the defendant Keane Wonder Mining Company filed an amendment to its answer, setting up all of the material facts disclosed by the evidence occurring both before and after the filing of plaintiff's complaint, excepting the fact of the surrender by the defendant Keane Wonder Mining Company back to the said Homer Wilson of all of said 975,000 shares of stock, other than the 160,000 shares deposited in escrow with the said Wellington Gregg, Jr. Thereafter it was stipulated and agreed by the attorneys for the plaintiff and defendant Keane Wonder Mining Company, in open court, that the

transfer of said indebtedness and notes of Homer Wilson by the Frances-Mohawk Mining and Leasing Company to the Keane Wonder Mining Company, the execution of said escrow agreement and the delivery thereunder to Wellington Gregg, Jr., in escrow, of 160,000 shares of said stock, the surrender by the Keane Wonder Mining Company to the order of said Homer Wilson of the remaining 815,000 shares of the original 975,000 shares of said stock theretofore in the possession of the Frances-Mohawk Mining and Leasing Company, and the execution by the Keane Wonder Mining Company of said deed of trust to Wellington Gregg, Jr., to secure the payment of the balance of its own said indebtedness and also that of said Homer Wilson to the Frances-Mohawk Mining and Leasing Company, were, each and all of them, acts forming one transaction, and parts of one transaction, and that they all occurred and took place on the 23d or 24th day of November, 1908.  And it was further admitted by counsel for the defendant Keane Wonder Mining Company, in open court, that the defendant Keane Wonder Mining Company had notice and knowledge of the existence and execution of the written agreement between plaintiff and Homer Wilson, marked "Plaintiff's Exhibit 1," and of all the rights and interest created thereby.

Thereupon said cause was argued by the respective counsel for the plaintiff and the defendant Keane Wonder Mining Company, and said defendant Keane Wonder Mining Company moved the court for judgment in its favor upon the merits, and for judgment that the plaintiff take nothing herein as against the defendant Frances-Mohawk Mining and Leasing Company.

Thereafter the court made its findings of fact and decision in writing, and directed that judgment be entered in favor of plaintiff, to the effect that the said Frances-Mohawk Mining and Leasing Company be required to deliver said stock to the plaintiff, and further ordering that plaintiff's application to file a supplemental complaint, setting up the facts which occurred after the commencement of the

action as shown by the evidence, be allowed.    Thereafter
the plaintiff filed such an amendment and supplement to
the original complaint.

*James F. Peck, F. J. Solinski,* and *Paul C. Morf,* for
Appellant:

The evidence shows that Wilson was the owner of said
stock when the plaintiff had a verbal understanding with
him to negotiate sales and find purchasers of a certain
portion of said stock for a compensation to be paid to
him by Wilson, in the shape of stock, upon performance
of said services.    This understanding did not make Elgan
a partner in the promotion, or one of the promoters, and
no title or ownership vested in him to any part of said
stock.    (*Edward* v. *Goldsmith,* 24 How. 536, 16 L. Ed. 762;
*Beckwith* v. *Talbott,* 5 Otto, 289, 24 L. Ed. 496; *Gentry* v.
*Singleton,* 128 Fed. 679, 682; *Corbin* v. *Holmes,* 154 Fed.
598; *Coward* v. *Clanton,* 122 Cal. 454; *Mason* v. *Hackett,*
4 Nev. 425; 1 Pom. Eq. Jur. 367; 3 Pom. Eq. Jur. 1236,
1296; *Otis* v. *Sill,* 8 Barb. 102.)

Neither did the written agreement of December 23,
1907, shown in evidence, vest any title or ownership in
the plaintiff to any of said stock.    By that agreement
Wilson merely agreed to transfer and deliver to the
plaintiff 160,000 shares of stock in the Keane Wonder
Mining Company upon the surrender and release of said
stock to Wilson by the pledgee.    The agreement is
entirely executory, it describes no specific stock, and it is
conditioned upon the surrender and release of the stock
by the pledgee at a future time.

It is well settled by a preponderating current of author-
ity that such an agreement creates no "interest" in prop-
erty, passes no title, and does not confer the right to
possession.    (35 Cyc. 275, 293, and cases cited.)

See, also, *Carpenter* v. *Glass,* 67 Ark. 139, 53 S. W. 678;
*New England Co.* v. *Standard Co.,* 165 Mass. 330; *Comm.
Nat. Bk.* v. *Gillette,* 90 Ind. 268, 46 Am. Rep. 222; *McLaugh-
lin* v. *Piatti,* 27 Cal. 451; *Caruthers* v. *McGarvey,* 41 Cal.
415; *Blackwood* v. *Cutting Co.,* 76 Cal. 218.

The order given by Wilson upon the Frances-Mohawk Mining Company on May 22, 1908, did not amount to a delivery by Wilson. It was procured by plaintiff at a time when said Wilson had no right to the possession of said stock nor any control over it and when he could not deliver it. The said order was not accepted or acted upon, it was wholly nugatory, and the procurement of it an idle act, and its force was spent when the pledgee in possession of the stock refused to deliver.

Hence the plaintiff, at the commencement of the action, was not the owner of 160,000 shares of said stock, but held a mere contract right to receive it from Wilson, upon the surrender and release of the stock to Wilson.

The lower court erred in not rendering judgment of dismissal of the action in accordance with the motion of this defendant, made at the end of plaintiff's case.

The defendant, Keane Wonder Mining Company, offered no evidence, but moved for judgment of dismissal of the action as to both defendants.

"Where the proof shows there are no such facts as alleged, the defendant should not have judgment of nonsuit, but a general judgment of dismissal." (23 Cyc. 774.)

Therefore said motion was the proper motion to make in this case. And it was the proper motion, notwithstanding the fact that the Frances-Mohawk Mining Company, one of the defendants, had withdrawn its demurrer and consented to an entry of its default. The defense of the Keane Wonder Mining Company went to the cause of action alleged in the complaint. By denying plaintiff's ownership and right to the possession of said 160,000 shares of stock, and denying the general facts alleged in the complaint as the basis of plaintiff's right and cause of action, the defendant Keane Wonder Mining Company was entitled to show who was the true owner of said stock at the time of the commencement of the action, and who was then entitled to its possession, and to generally give its version of the transactions alleged in the complaint. (Abbott's Trial Briefs, II Pleadings, 1303; *Caldwell* v. *Bruggerman,* 4 Minn. 270; *Welton* v. *De Yur-*

*man,* 26 Neb. 59; *Kunitzer* v. *Cummings,* 46 N.Y. Supp. 378; *Tompkins* v. *Tompkins,* 78 Hun, 220; *Jones* v. *Rush,* 156 Mo. 364; *Ward* v. *Richardson,* 35 Cal. 149; *Eames* v. *Crosier,* 101 Cal. 262; *Wenzal* v. *Schulz,* 100 Cal. 250; *Ill. Trust Co.* v. *Pac. Ry. Co.,* 115 Cal. 285; *Ferguson* v. *Rutherford,* 7 Nev. 385.)

The rule that a variance between the pleadings and the proof must be taken advantage of at the trial where it may be cured by amendment or is waived does not apply where there is an entire failure of proof. (31 Cyc. 755, citing *White* v. *Gilleland,* 93 Mo. App. 310; *Springfield Bank* v. *Spr. F. Nat. Bank,* 30 Mo. App. 271; *Peck* v. *Thompson,* 15 Vt. 637.) For in such a case an amendment would not be at all allowable. (31 Cyc. 714, citing *Carpenter* v. *Huffsteller,* 87 N. C. 273; *Dudley* v. *Duval,* 29 Wash. 258.)

The court had no power to render a judgment in favor of plaintiff upon a cause of action or state of facts not alleged. A plaintiff cannot set up one cause of action and recover upon another. If he proves a different cause of action from that alleged in the complaint, it is not a variance but a failure of proof and fatal to a judgment in his favor. (11 Ency. Pl. & Pr. 890–893, and cases cited.) And the rule is the same in law or in equity. (11 Ency. Pl. & Pr. 896–898; Abbott's Trial Briefs, II Pleadings, 1688, *et seq.,* and cases cited; *Dalton* v. *Leahy,* 80 Cal. 446; *Carson L. R. Co.* v. *Bennett,* 2 Nev. 249; *Maddox* v. *Bramlett,* 84 Ga. 84; *Greer* v. *Heiser,* 16 Colo. 306; *Miller* v. *Hallock,* 9 Colo. 553; 23 Cyc. 816, 817, 818, and cases cited; *Pettington* v. *Fast,* 87 Cal. 461.)

In order to overcome some of the objections urged, the plaintiff filed a so-called "amendment and supplement to the complaint" a month after rendition of the judgment, and two days before final entry of the judgment. This pleading is in substance and in fact a supplemental complaint, and admission of service of the same upon this defendant was refused.

The supplemental complaint was filed and served, without admission of service, on November 26, 1910. The

judgment and decree was entered by the clerk on November 28, 1910.

It was error to give judgment under this supplemental pleading without giving this defendant opportunity to answer. (*Mears* v. *James,* 2 Nev. 342.)

It was error to hear the application for leave and to grant such leave *ex parte* and without notice. (Comp. Laws, 3162, 3163; 31 Cyc. 501–502, and cases there cited; *Keller* v. *Blasdel,* 2 Nev. 162.)

The deposit of 160,000 shares in escrow in November, 1908, was not a segregation of plaintiff's stock. That deposit was an arrangement between the Keane Company and the Frances-Mohawk Company, because of this action, and not for the purpose of identifying or segregating any stock claimed by plaintiff.

The fact that Wilson told plaintiff at Rhyolite in 1909 that the 160,000 shares of stock in escrow was plaintiff's block of stock is, for the reasons already stated, insufficient to pass title to that specific stock. Moreover, if plaintiff had intended to rely upon that fact at the trial to prove ownership, he should have set up this subsequently completed transfer, if it amounted to that much (which we do not admit), by way of supplemental complaint. (*Northern Ry. Co.* v. *Jordan,* 87 Cal. 23, 27.)

The mere fact of the surrender to Wilson of 815,000 shares of said stock, as shown by the evidence, would not operate to discharge the pledgee's lien in this case on the remainder of said stock. (22 Am. & Eng. Ency. Law, 861, note 3; *Macomber* v. *Parker,* 14 Pick. 497; *Casey* v. *Cavaroe,* 96 U. S. 467.) Therefore the finding of the fact of such surrender, in any event, would not justify the conclusion and decision that the plaintiff is entitled to the immediate possession of said 160,000 shares of stock.

The decision or judgment rendered is based upon findings outside of the pleadings and issues, and therefore erroneous and void.

A conclusion based upon findings outside of the issues cannot be sustained. (*Commissioners* v. *Barnard,* 98 Cal. 199; *Fisk* v. *Casey,* 36 Pac. 668.)

We claim that the fact that the motion for a nonsuit was withdrawn and that the appellant moved for a dismissal of the action, after first filing amendments to its answer, does not alter the case in the least.

It will appear by reference to the amendments filed by the Keane Wonder Mining Company to its original answer that the only facts arising after the commencement of the action set up in such amendments are the facts that in November, 1908, the Keane Wonder Mining Company succeeded to the pledge-hold interest of the original pledgee and became the owner of the unpaid balance owing on account of Wilson's personal indebtedness secured thereby.

This escrow agreement and the surrender of 815,000 shares of said stock to Wilson and the delivery of 160,000 shares of the original 975,000 shares to the escrow holder under said escrow agreement are facts which were brought out by the plaintiff in his own evidence, and in the evidence of Homer Wilson, who was a witness for the plaintiff.

It is true the respondent after the case was decided by the court below, and without notice or opportunity given to the Keane Wonder Mining Company to object or reply thereto, filed a supplemental complaint in which he sets up these facts occurring in November, 1908, upon which he now relies in this court for a cause of action arising at that time; but to attempt to supply a cause of action after the case was finally decided by the court below is contrary to all precedent and reason and cannot be justified upon any principle of law or rule of procedure.

*Augustus Tilden* and *J. F. Douglas,* for Respondent:

The question of ownership as between Wilson and Elgan is foreclosed by the recitals of ownership contained in Plaintiff's Exhibit 1. Elgan concedes the original validity of the Keane Wonder Mining Company's pledge-hold interest. He says, in effect: "Whatever the ownership of the 975,000 shares, the Keane Wonder Mining Company originally possessed a valid lien upon all

of them.    But that lien has been lost in two ways: First, by the surrender of 815,000 to the principal debtor, Wilson; secondly, by the deposit of the remaining 160,000 in escrow subject to conditions incompatible with the maintenance of the lien."

By the one act the lien was forfeited upon the principles governing the relation of creditor, principal and surety; by the other act the lien was abandoned by operations of the rule that a pledgee must at his peril maintain a continuous dominion over the thing pledged.

In either event, the condition mentioned in Plaintiff's Exhibit 1, by which Elgan's enjoyment of his 160,000 shares was postponed, has been fulfilled, entitling him to immediate possession of his stock.

Counsel contend that Plaintiff's Exhibit 1 is but an agreement to transfer.    It is more than that.    It establishes not only that the parties "now are" but that they "have been" mutually interested.    The agreement to transfer does not vest but merely postpones the time of enjoyment of Elgan's already invested interest.    If that part of the contract had been omitted the law would have supplied it, as Wilson would have been bound to transfer on the extinguishment of the lien in any event.

The surrender to Wilson, the principal pledgor, of his 815,000 shares released to Elgan, the accommodation pledgor, his 160,000 shares.

If the first point is well taken, if the question of ownership as between Wilson and Elgan is foreclosed by estoppel, then, as between them, Elgan was a mere accommodation pledgor.  (24 Am. & Eng. Ency. Law, 1st ed. p. 772; 22 Am. & Eng. Ency. Law, 2d ed. p. 908.)

Moreover Homer Wilson was at all times president of the Keane Wonder Mining Company.    The Keane Wonder Mining Company, thus fully advised, was bound to treat Wilson and Elgan in their respective capacities of principal and surety.

This principle required it to refrain from acts tending to diminish the principal security, to the benefits of which the surety was entitled to be subrogated should

resort be had to his stock.   This subrogation takes place by operation of law. (*Keel* v. *Levy,* 24 Pac. 253; *American Bonding Co.* v. *Pueblo Inv. Co.,* 150 Fed. 17, 21; *Brown* v. *First National Bank,* 112 Fed. 901.)

Evidence of facts occurring after the commencement of this action was available to plaintiff in the peculiar facts of this case.

Assuming that the action was prematurely brought, the rule is not absolute that a supplemental pleading may not be filed.   That it may not be filed as a matter of right is probably true, but that it may not be filed at all is a proposition not sustained by authority.   If the cause in fact accrues before judgment rendered, the court may, on application, permit the filing of a supplemental pleading showing that fact.

"If an action be prematurely brought the original complaint is of no effect and the court does not err in refusing to allow a supplemental complaint to be filed." (31 Cyc. 504.)

But it is now too late for defendant to urge this point, as it itself introduced into the pleadings the supplemental matter and based a prayer for relief upon it, and insisted on this course in the face of Elgan's consent to a nonsuit.

"Parties have the undoubted right to submit by agreement any issue or issues of fact, equitable or legal, to a jury for determination, and having done so they will not afterwards be heard to complain." (*Green* v. *Taney,* 3 Pac. 423.)

"A party cannot assign error upon an immaterial issue tendered by himself." (*Cole* v. *Cheovenda,* 4 Colo. 17, 21.)

If a party cannot assign error upon an immaterial issue, *a fortiori* he cannot assign error upon a material issue tendered by himself.

In conclusion, we have only to note appellant's point that the court erred in permitting respondent to file a supplemental complaint after the announcement of judgment and filing of findings.   The error, if any, was with-

out prejudice: (1) Because substantially the same facts are set up in appellant's supplemental answer; (2) because the facts pleaded, going as they do to new matter set up in the answer, were admissible on respondent's part without any pleading.

By the Court, NORCROSS, J. (after stating the facts as above):

This is an appeal from the judgment and from an order denying a motion for a new trial. The record contains about forty assignments of error; but it will not, we think, be necessary to consider each separately, as the material questions presented will fall under a few main propositions.

It is contended that the court erred in permitting the plaintiff to file an amended and supplemental complaint, after the decision and before the entry of judgment, setting up the facts which occurred subsequent to the institution of the action. We think, under the facts of this case, no error was committed in such order. It is conceded that the plaintiff was in error as to certain facts alleged in the original complaint, and that at the time suit was instituted plaintiff was not entitled to recover on the actual facts of the case then existing. Plaintiff offered to consent that the motion for a nonsuit be granted. The defendant appellant then asked leave to withdraw such motion, and by stipulation of the parties the motion and consent were withdrawn, and defendant given leave to file amendments to its answer to conform to the proofs. The defendant filed amendments to its answer, relying upon facts occurring subsequent to the institution of the suit, and praying for the judgment of the court that it be adjudged entitled to the possession of the stock in question, to hold the same as security for the payment of the balance due on the Wilson notes. The case was finally presented to the court upon the facts as disclosed upon the trial, and upon those facts the defendant Keane Wonder Mining Company was asking for judgment in its favor. We think the court very prop-

erly permitted the plaintiff to amend and supplement his pleading, so that judgment could be rendered in accordance with the undisputed facts shown to have existed at the time of the trial. We think, under the circumstances, defendant appellant is not in position to object to the order permitting the filing of the amended and supplemental complaint.

Upon the facts of this case, there is but one controlling question: Has the defendant Keane Wonder Mining Company the right to the possession of the stock in question, to be held by it as security for the payment of the balance due on the Wilson notes? If it has not the right to such possession for such purpose, the stock ought to be delivered to the plaintiff; for it is clearly shown to be his stock, and there does not seem to be any controversy over plaintiff's allegation that a judgment for damages would not be an adequate remedy in this case.

It is conceded that the Keane Wonder Mining Company, on the 23d or 24th day of November, 1908, the date of the assignment of the Wilson notes to the latter company and the surrender by said company of the said 815,000 shares of its stock, theretofore held as pledge, back to said Wilson, and the deposit in escrow of the remaining 160,000 shares of stock to abide the result of this suit, had knowledge of the existence and execution of the written agreement between respondent and the said Homer Wilson, of date December 23, 1907. (Plaintiff's Exhibit 1, *supra.*) By the terms of that agreement, respondent became the owner of 160,000 shares of the stock of the appellant corporation, subject to the conditions of the pledge of such stock and the remaining stock of Homer Wilson as security for the payment of the indebtedness of said Wilson and appellant. When the appellant became the assignee of the Wilson notes, it had the undoubted right to hold the security previously held by the State Bank and Trust Company and the Frances-Mohawk Mining and Leasing Company for the payment of such notes. However,

having knowledge that the respondent was the owner of 160,000 shares of the 975,000 shares so pledged as security, the appellant was bound to exhaust the security of the principal debtor, Wilson, before resorting to that of the respondent. The appellant could not, by arrangement with Wilson, without the knowledge or consent of respondent, segregate the stock to which respondent was entitled and hold that alone as security for the Wilson notes, and surrender the remaining stock to Wilson, freed from the conditions of the pledge. This transaction cut off entirely respondent's right to ever become subrogated to all the rights of the owner and holder of the Wilson notes. The courts are justified in accepting it as a fact established that the appellant considered the 160,000 shares retained as ample security for the payment of the balance due on the Wilson notes, and that the stock surrendered to Wilson, being about five times greater than the stock retained as security, was more than sufficient to have secured the payment of the notes, so that the respondent would have been ultimately entitled to have recovered his stock in full. We think the appellant should be held to have surrendered its right to hold any part of the respondent's stock as security for the payment of the Wilson notes.

In *Le Marchant* v. *Moore,* 150 N. Y 209, 44 N. E. 770, one question, similar in principle to that presented here, was considered by the Court of Appeals of New York. We quote from the opinion in that case by Haight, J., the following excerpt: "Treating the plaintiffs as the owners, with the stock in the possession of the defendants, as pledgees of Evans & Co. for the payment of their indebtedness to the defendants, the plaintiffs had the right to demand, and a court of equity would require, the defendants to first satisfy their claim out of the other securities in their hands belonging to Evans & Co. before resorting to the property of the plaintiffs. The defendants, as pledgees, were entitled to regard Evans & Co. as the owners, until they were notified of the plaintiffs'

rights. Thereafter they were bound to recognize the plaintiffs' claim, and deal with the stock accordingly. The plaintiffs, as owners, had the right to have timely notice of any sale of their stock, and to have the other stocks or security in the hands of the defendants belonging to the pledgor first applied. (*Smith* v. *Savin*, 141 N. Y. 315; *Hazard* v. *Fiske*, 83 N. Y. 287.) "

See, also, *Union Pacific Ry. Co.* v. *Schiff* (C. C.) 78 Fed. 216; *Brown* v. *Bank*, 112 Fed. 901, 50 C. C. A. 602, 56 L. R. A. 876; *Keel* v. *Leby*, 19 Or. 450, 24 Pac. 253; Colebroke on Collateral Securities, sec. 239; Jones on Pledges, sec. 711.

The judgment and order appealed from are affirmed.